UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
STEVE IDEYI,

              Plaintiff,

      -against-

SALVATORE SCLAFANI,

              Defendant.
-------------------------------------------------------------------X

CV 11 - 3948

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 16 2011 ★
BROOKLYN OFFICE

ALIANO, J
GO, M.J.

**NOTICE OF REMOVAL**    **NO SUMMONS ISSUED**

TO THE CLERK OF THE COURT:

PLEASE TAKE NOTICE that defendant Salvatore Sclafani, ("the Removing Defendant") by his attorney, ERIC T. SCHNEIDERMAN, Attorney General of the State of New York, hereby serves this Notice of Removal of *Steve Ideyi v. Salvatore Sclafani,* Index No. 14892/2011, currently pending in Supreme Court of the State of New York, Kings County, which is described below.

    1.    On June 29, 2011, the plaintiff commenced this action in Supreme Court of the State of New York, Kings County, entitled *Steve Ideyi v. Salvatore Sclafani* (the "State Court Action"), Index No. 14892/2011 by filing a summons and complaint in the Office of the Kings County Clerk.

    2.    This action is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1331 in that it seeks damages, injunctive relief and attorneys' fees and costs and disbursements for alleged violations of plaintiff's rights under the Constitution and laws of the United States pursuant to 42 U.S.C. § 1983, as well as certain state and

city law claims over which this Court has supplemental jurisdiction under 28 U.S.C. § 1367.

4. The Removing Defendant seeks removal of this action to this Court pursuant to 28 U.S.C. § 1441(a) and (b) on the ground that it is an action over which this Court would have original federal question jurisdiction.

5. A copy of the summons and complaint filed in the State Court Action setting forth the claim for relief upon which the State Court Action is based was first received by the Removing Defendant on August 2, 2011 when the copy was served at his office at 2025 Richmond Avenue, Staten Island, New York on that date. A true copy of the summons and complaint received by the Removing Defendant on August 2, 2011, which constitutes all of the process, pleadings and orders served in the State Court Action, is annexed hereto as Exhibit A.

6. This Notice of Removal is timely because it is being filed within 30 days from the date the Removing Defendant received a copy of the initial pleading setting forth the claim for relief upon which the State Court Action is based.

7. No previous application for this relief has been made.

8. Promptly after the filing of this Notice of Removal with the Clerk of this Court, the Removing Defendant will give written notice thereof to the plaintiff and will file a copy of this Notice of Removal with the Clerk of the state court in which this action has been pending.

WHEREFORE, Defendant Salvatore Sclafani respectfully requests that this civil action be removed from the Supreme Court of the State of New York, Kings County, to

the United States District Court for the Eastern District of New York.

Dated: New York, New York
August 16, 2011

                                      ERIC T. SCHNEIDERMAN
                                      Attorney General of the
                                       State of New York
                                      Attorney for Defendant Salvatore Sclafani
                                      By:

                                      _____
                                      MICHAEL R. KLEKMAN
                                      Assistant Attorney General
                                      120 Broadway
                                      New York, New York 10271
                                      (212) 416-8592
                                      Michael.Klekman@ag.ny.gov

TO:    Joshua Beldner, Esq.
        The Law Office of Steven A. Morelli, P.C.
        Attorneys for Plaintiffs
        1461 Franklin Avenue
        Garden City, NY 11530
        (516) 393-9151

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
--------------------------------------------------------------X

STEVE IDEYI,

                    Plaintiff,

    -against-

SALVATORE SCLAFANI,

                    Defendant.

--------------------------------------------------------------X

**SUMMONS**
Plaintiff designates
**KINGS COUNTY**
as the place of trial

The basis for the venue
is **CONDUCT COMPLAINED OF**

To the above named defendant:

    **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or to answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: Garden City, New York
         June 29, 2011

                                      The Law Office of Steven A. Morelli, P.C.
                                      *Attorneys for Plaintiff*
                                      1461 Franklin Avenue
                                      Garden City, NY 11530
                                      (516) 393-9151

                                      JOSHUA BELDNER

2011 JUN 29 PM 12: 57
RECEIVED
KINGS COUNTY CLERK

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
------------------------------------------------------------X
STEVE IDEYI,

                      Plaintiff,                        Index No. _____

                                                  **COMPLAINT**

          -against-

SALVATORE SCLAFANI,

                      Defendant.
------------------------------------------------------------X

Plaintiff STEVE IDEYI, by and through his attorneys, THE LAW OFFICE OF STEVEN A. MORELLI, P.C., alleges, upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Dr. Steve Ideyi is a well respected Attending Physician in Radiology, who is from Nigeria. In early 2006, Defendant Dr. Salvatore Sclafani, who was Chairman of Radiology SUNY Downstate Medical Center, recruited Plaintiff from Columbia University because of his superior knowledge of the field, and his excellent reputation in the medical community. Specifically, Sclafani promised Dr. Ideyi that if he joined SUNY Downstate, he could perform, and teach an innovative procedure which utilized a "Silverhawk" device. Sclafani also represented to Dr. Ideyi that he would be paid annual bonuses, and also be compensated based on the number of procedures he performed. Based on these representations, on May 5, 2006, Dr. Ideyi decided to leave Columbia University and join Sclafani at SUNY Downstate.

1

2.  Almost immediately upon his hiring, however, Sclafani subjected Dr. Ideyi to discriminatory treatment and ridicule. As Plaintiff's direct supervisor, Sclafani regularly yelled at Dr. Ideyi in front of others in a demeaning manner, scolding him about "how things work in this country." Additionally, Sclafani intentionally assigned Plaintiff a significantly higher case load than his Caucasian and American colleagues. Further, Sclafani took great efforts to deny Plaintiff the opportunity to perform procedures using the Silverhawk device. Sclafani also lodged false accusations regarding Plaintiff's punctuality, embarrassed him at a conference by announcing that Dr. Ideyi was no longer authorized to perform G-Tube procedures, and suspended him without any rational basis whatsoever.

3.  Dr. Ideyi recognized the discriminatory treatment he was being subjected to, and filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission on February 15, 2008. On July 1, 2008, less than five months after complaining of discrimination, Plaintiff was terminated from employment. Dr. Ideyi's termination was based upon the recommendation of Scalfani. Plaintiff was replaced by a Caucasian-American that he had taught during his tenure at SUNY Downstate.

4.  As more fully set forth below, in treating Plaintiff differently than his similarly situated Caucasian and American co-workers, subjecting Dr. Ideyi to a hostile work environment, and eventually recommending that he be terminated, Defendant Sclafani discriminated against Plaintiff in the compensation, terms,

conditions, and/or privileges of his employment on the basis of his race and national origin, and based on Plaintiff's good faith opposition to discriminatory practices, in violation of New York State Executive Law §§ 290 et seq., Title 8 of the New York City Administrative Code, and the Equal Protection Clause of the 14th Amendment to the U.S. Constitution, pursuant to 42 U.S.C. § 1983.

5. Further, as more fully set forth below, Sclafani knowingly misrepresented to Plaintiff that he would be awarded bonuses in the form of physician fees based on the number of procedures he performed. Plaintiff relied on this misrepresentation in deciding to leave his position at Columbia University and join SUNY Downstate. Plaintiff was never paid the physician fees promised by Sclafani. As a result of Plaintiff's detrimental reliance, Dr. Ideyi suffered monetary damages. As a result, Scalfani is liable for fraudulent misrepresentation.

## JURISDICTION AND VENUE

6. Jurisdiction is proper pursuant to CPLR § 301. Venue is proper pursuant to CPLR § 503.

## PARTIES

7. Plaintiff STEVE IDEYI is a 50-year-old black man, who is a resident and domiciliary of Nassau County, New York. Mr. Ideyi was born in Nigeria. At all times relevant to this complaint, Mr. Ideyi was an "employee" of State University of New York Downstate Medical Center ("SUNY Downstate"), as that term is defined by New York State Human Rights Law, and Title 8 of the New York City

Administrative Code.

8. Defendant SALVATORE SCLAFANI, at all relevant times, was and still is a supervisor and the Chairman of Radiology of SUNY Downstate. Dr. Sclafani is a Caucasian American. As Chairman, Defendant Sclafani was responsible for allocating assignments, and carrying out the business and affairs of the Department. At all times relevant to this complaint, Sclafani was Plaintiff's direct supervisor at SUNY Downstate. Upon information and belief, Sclafani was and still is a resident and domiciliary of Kings County, New York.

## FACTUAL ALLEGATIONS

### Background

9. In early 2006, Plaintiff was working as an Attending Physician in Interventionist Radiology at Columbia University. Plaintiff has extensive experience and knowledge of the field and at the time maintained an excellent reputation in the medical community.

10. As a result of his outstanding accolades and credentials, Plaintiff was approached by Defendant Dr. Salvatore Sclafani to work at SUNY Downstate Medical Center.

11. At the time, Sclafani represented to Plaintiff that he would be allowed to teach an invasive procedure using a "Silverhawk device." Sclafani agreed that he would

learn from Plaintiff with respect to these procedures, until he felt comfortable to perform the procedure himself.

12. Sclafani also assured Plaintiff that he would receive part of the physician's fee on each case performed, and a bonus of between $10,000 and $20,000 each year.

13. Based on Scalfani's representations, Plaintiff agreed to leave his prestigious position at Columbia University, and join SUNY Downstate. On or around May 8, 2006, Dr. Ideyi was hired by SUNY Downstate to be an Assistant Professor in the hospital's Department of Radiology.

14. In addition to his position as Assistant Professor, Plaintiff was also an Attending Physician in Interventionist Radiology for invasive procedures, and performed Interventional radiological procedures at Kings County Hospital Center (KCHC), University Hospital of Brooklyn (UHB), Lutheran Medical Center (LMC) and Veterans Affairs Medical Center, Brooklyn (BVAMC). Plaintiff also supervised and taught fellows, residents and medical students.

*Discriminatory/Hostile Treatment*

15. During Plaintiff's tenure at SUNY Downstate, there were five Interventionists working in Sclafani's department. In addition to Dr. Ideyi, there were three Caucasian-American Interventionists – Dr. Dan Levine, Dr. Michael Hershkowitz, and Dr. Eric Lang. There was also one Asian-American

5

Interventionist.

16. Almost immediately upon his hiring, Defendant began treating Plaintiff differently than the other Interventionists in his department. For example, Sclafani assigned Plaintiff a significantly higher work load than his American colleagues.

17. At times, Sclafani had the three Caucasian Interventionists performing less than five cases. Plaintiff, on the other hand, was handling more than 15 cases by himself.

18. Plaintiff had such a large workload that another Attending Physician, concerned that Plaintiff was being overworked, wrote to request that a Fellow be assigned to Dr. Ideyi, instead of having off one day per week. Sclafani rejected this request.

19. Nevertheless, Plaintiff proved himself to be a dedicated, proficient and professional employee. Indeed, over the course of his employment, Plaintiff performed the greatest number of interventional invasive procedures with the least number of complications.

20. Despite his outstanding performance, Sclafani injected himself in the middle of Plaintiff's classes, took over Plaintiff's cases without informing him, and burst into Plaintiff's procedure room on numerous occasions to question Dr. Ideyi and undermine him in front of the nurses, residents, technicians and students.

21. Dr. Sclafani never treated any of the other Caucasian, or American Interventionists in his department in this manner.

22. In or around November 2006, Plaintiff began a case with an Interventional Radiology Fellow at SUNY Downstate. Dr. Ideyi instructed the Fellow on the techniques and devices utilized to ensure a safe procedure.

23. Dr. Sclafani, however, gave the Fellow different instructions that led to intra-procedure complications. When Plaintiff inquired about the complications, the Fellow informed Plaintiff that Dr. Sclafani gave the Fellow the contradicting instructions.

24. Additionally, on numerous occasions, Dr. Sclafani verbally abused Plaintiff in front of others during conferences. Meanwhile, Sclafani did not treat other, similarly situated American and Caucasian physicians in this manner. Rather, Defendant treated Plaintiff's colleagues with dignity and respect.

*The Silverhawk Procedure*

25. In or about the fall of 2006 or the winter 2007, Plaintiff initiated the endovascular revascularization procedure using the Silverhawk Device. Dr. Ideyi successfully performed this procedure on a number of patients at Columbia University.

26. Upon information and belief, no other Interventionist at SUNY Downstate ever used the procedure. Indeed, Plaintiff's knowledge and expertise with respect to the Silverhawk device was one of the reasons he was recruited by Sclafani to work at Downstate in the first place.

27. In 2007, Dr. Sclafani and Dr. Ideyi scheduled a case to perform together. The patient was prepped and on the operating table, as scheduled. Sclafani failed to show up on time. After waiting for nearly 45 minutes, Plaintiff started the case with his Fellow.

28. Dr. Sclafani eventually stormed into the room late and began yelling at Plaintiff. When Dr. Ideyi began to speak, Sclafani told Plaintiff to "shut up." This occurred just as Plaintiff was about to start using the Silverhawk Device.

29. Dr. Ideyi tried to explain to Defendant that the patient was on the table for over 45 minutes, and that he had only just begun the procedure when he burst into the room. Defendant refused to listen to Dr. Ideyi's explanation. Everyone in the operating room was shocked by Sclafani's outrageous behavior.

30. In an attempt to make amends with Defendant following the procedure, Plaintiff spoke to Sclafani and scheduled two additional cases based upon Sclafani's calendar.

8

31. During the next scheduled case, however, Sclafani attended the procedure for a few minutes, and then excused himself and left the room.

32. In addition, from January 2008 to July 2008, Defendant failed to show up to the other scheduled procedures. Essentially, Dr. Scalfani demonstrated a steadfast refusal to learn the procedure.

33. On the other hand, Dr. Sclafani actively learned how to perform several other procedures which were taught by the Caucasian and Asian-American Interventionists in his department. Evidently, Sclafani did not want to learn the procedure from Plaintiff because he was a black, Nigerian man.

34. Moreover, Dr. Sclafani took great efforts to make it difficult for Plaintiff to perform additional cases involving the use of the Silverhawk Device, even though the procedure was a great resource for the hospital and could potentially help many patients avoid serious surgery.

35. For example, Sclafani suddenly began to require Plaintiff to obtain clearance from Vascular Surgeon Dr. Jon Kirwin prior to performing the procedure. Kirwin constantly undermined Plaintiff's authority by seeking only the opinions of Caucasian residents about patient care, rather than consult with Plaintiff, who was the actual Attending Physician.

36. Additionally, in or around February 2008, Defendant directed a podiatrist not to use the Silverhawk procedure.

### *Defendant's Continued Harassment*

37. In or around July 2007, Plaintiff had a meeting with Dr. Sclafani and the Radiology Administrator.

38. At this meeting, Plaintiff was informed that Defendant made several complaints about his "tardiness." Prior to this meeting, Defendant had never made any such complaints about Plaintiff. Additionally, any and all accusations of tardiness were categorically and undeniably false.

39. Dr. Ideyi told Defendant that based on hospital data, he performed the most invasive procedures with the least number of complications, and did not understand why he was being treated in such a manner.

40. Thereafter, Dr. Sclafani and the Administrator scheduled three additional meetings to discuss Plaintiff's work performance.

41. In each of the subsequent meetings, Plaintiff was furthered demeaned by Defendant. For example, Sclafani made discriminatory remarks to Plaintiff such as explaining "how things work in this country."

42. Additionally, Dr. Sclafani dismissed Plaintiff's comments at conferences and questioned his techniques in certain cases in an unprofessional and condescending manner. When Plaintiff tried to explain that his techniques were supported by the medical community, Dr. Sclafani was rude and dismissive.

43. Dr. Sclafani's comments were so offensive that, on at least one occasion, an IR Fellow reminded Dr. Sclafani that Plaintiff's techniques were actually what were described in books and medical literature.

44. In addition, on several other occasions, an Attending Physician, who was unhappy with the attacks against Plaintiff, came to Plaintiff's defense and demonstrated that what Plaintiff was trying to explain to Dr. Sclafani was supported by medical literature. It was not until this Attending Physician came forward that Dr. Sclafani stopped his relentless badgering of Plaintiff at meetings and conferences.

45. On or around September 19, 2007, at a conference, Sclafani announced, in front of nurses, technicians, and medical students that Plaintiff was barred from doing gastrostomies ("G-tubes") because of a single case of gastrostomy dislodgement. This was completely unwarranted as this case was an extremely difficult case.

46. Despite the patient's several prior medical problems, Plaintiff performed the procedure to the best of his abilities. In fact, at the time, Dr. Sclafani unsuccessfully attempted to perform the same procedure.

11

47. By limiting Plaintiff's privileges as an Attending Physician, Sclafani placed Plaintiff's job security in jeopardy.

48. Almost every interventional radiologist in the group, including Dr. Sclafani, incurred more serious complications than Plaintiff in the above-mentioned case. However, none of the Caucasian-American Interventionists were reprimanded in any way. Plaintiff, however, was suspended by Sclafani. This differential treatment is clear evidence of discrimination.

49. From May 6, 2006, to September 9, 2007, according to hospital data, Plaintiff performed over 110 cases of G-tubes. In addition, Plaintiff performed more G-tubes than any other Attending Interventional Radiologist in the group, with the least number of complications.

50. Despite all of Plaintiff's accomplishments with the procedure, Dr. Sclafani still treated Plaintiff unfairly and discriminated against him based upon his race and national origin by suspending him and preventing him from conducting this procedure and by humiliating him in front of his colleagues.

51. In addition, upon information and belief, Dr. Sclafani negatively skewed Plaintiff's M&M reports, adversely affecting Plaintiff's employment and reputation as a physician in the hospital. On the other hand, Dr. Sclafani covered

up or embellished M&M reports of the cases he and other Caucasian-American doctors were involved in.

52. On or about October 30, 2007, Plaintiff was summoned to Dr. Sclafani's office where he met with Dr. Sclafani and the Radiology administrator. Dr. Sclafani recommended that Plaintiff resign. Dr. Ideyi refused, as he knew that he was performing well.

53. On February 5, 2008, Plaintiff wrote a letter to the President of SUNY Downstate, complaining of the unfair treatment he was being subjected to. He never received a response.

54. On or about February 11, 2008, the Radiology Administrator, with Labor Relations, pressured Plaintiff to furnish confidential information about Plaintiff's health. Following hospitalization for herniated disc injury, Plaintiff was placed on light duty for a herniated disc. Dr. Sclafani unreasonably pressured Plaintiff to undertake a workload inimical to his health and contrary to his doctor's advice.

55. Plaintiff felt dejected, used and exploited. He was recruited from Columbia University, only to be subjected to malicious discriminatory attacks and a hostile work environment that negatively affected his career and reputation as a physician.

56. Furthermore, as explained above, when Dr. Sclafani recruited Plaintiff to work at SUNY Downstate he made certain promises to Plaintiff.

57. These promises included; a base salary, and annual bonuses. The bonuses were distributed each year by Sclafani, in his discretion. The other Interventionists in the department received annual bonuses. Dr. Ideyi never received any bonus.

58. Additionally, Dr. Sclafani assured Plaintiff that he would receive part of the physician's fee on each case he performed. Throughout the course of his employment, Plaintiff performed about 6237 cases on 5000 patients. However, Sclafani never gave Plaintiff the part of the Physician's fee for any of the cases he worked on that he was entitled to.

*Retaliation*

59. On February 15, 2008, Dr. Ideyi filed a complaint of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC). In his charge, Plaintiff complained of Sclafani's harassment.

60. On July 1, 2008, less than five months after he complained of discrimination, Plaintiff was terminated from employment. Plaintiff was terminated based on the recommendation of Sclafani.

61. Plaintiff was replaced by a Caucasian-American named Billy Walsh. Dr. Walsh

14

was a resident during Plaintiff's tenure at SUNY Downstate, and was taught by Dr. Ideyi.

62. Following his termination, Sclafani continued to retaliate against Plaintiff. Specifically, Sclafani intentionally provided false and negative information about Plaintiff to prospective employers who had interviewed Dr. Ideyi.

## CLAIMS FOR RELIEF

63. Based on the foregoing, Defendant Sclafani unlawfully discriminated against the Plaintiff in his compensation, terms, conditions, and/or privileges of employment, and subjected him to a hostile work environment, on the basis of his race and national origin, in violation of New York State Human Rights Law §§ 290 et seq., and Title 8 of the New York City Administrative Code.

64. Based on the foregoing, Defendant Sclafani unlawfully discriminated against the Plaintiff in his compensation, terms, conditions, and/or privileges of employment on the basis of his good faith opposition to discriminatory practices, in violation of New York State Human Rights Law §§ 290 et seq., and Title 8 of the New York City Administrative Code.

65. Based on the foregoing, in treating Plaintiff differently than his similarly situated Caucasian colleagues, Defendant violated the Equal Protection Clause of the 14th Amendment to the U.S. Constitution, pursuant to 42 U.S.C. § 1983.

66. Based on the foregoing, Plaintiff detrimentally relied on the intentional misrepresentations of Sclafani that he would be paid annual bonuses, and that he would be receive compensation in the form of physician fees based on the number of procedures he performed. Plaintiff was never paid these monies, and has thus suffered monetary damages stemming from Sclafani's misrepresentations. As a result, Scalfani is liable for fraudulent misrepresentation.

**WHEREFORE**, the Plaintiff demands judgment against Defendant for all compensatory, emotional and psychological damages, lost compensation, front pay, back pay, injunctive relief, liquidated damages, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that the Court grant the Plaintiff any other relief to which the Plaintiff is entitled, including but not limited to:

1. Awarding reasonable attorneys fees and costs and disbursements of this action;
2. Granting such other and further relief that to the Court seems just and proper.

Dated: Garden City, New York
June 29, 2011

THE LAW OFFICE OF
STEVEN A. MORELLI, P.C.
*Attorneys for Plaintiff*
1461 Franklin Avenue
Garden City, NY 11530
(516) 393-9151

_____
Joshua Beldner